

1 | **DEREK SEAN WHEAT**
Post Office Box 114
2 | Belvedere, CA 94920
Telephone: (510) 750-9281
3 | Email: derekswheat@yahoo.com
4
Plaintiff ,Pro se
5
6
7
8 | UNITED STATES DISTRICT COURT

9 | NORTHERN DISTRICT OF CALIFORNIA

10 | DEREK WHEAT, | Case No. **CV 13 5950**

11 |       Plaintiff, | **COMPLAINT FOR DAMAGES UNDER 42 U.S.C. § 1983 AND SUPPLEMENTAL STATE LAW CLAIMS**

12 |     v.

13 | HAROLD ORR, ANNA BLYAKHEROVA aka
ANNA BLYAKHEROVA SALAZAR, | **Jury Trial Demand; F.R. Civ. P. 38(b)**
14 | MAGDALENA INOCENCIO, SCOTT KING,
CORIZON HEALTH, INC. and DOES 1-50,
15 | inclusive,

16 |       Defendants.

17 | COMES NOW Plaintiff DEREK WHEAT ("Plaintiff") and complains and alleges as follows:

18 |     1.    This is a civil rights action arising out of the unconstitutional conduct of several

19 | employees of Corizon Health Care, Inc. ("Corizon") who were contracted to provide health care

20 | services to the Santa Rita Jail in Dublin, California. This action is brought pursuant to 42 U.S.C. §§

21 | 1983 and 1988 and the Fourteenth Amendment to the United States Constitution. Jurisdiction is

22 | founded upon 28 U.S.C. §§ 1343(A)(3),(4) and the aforementioned statutory and constitutional

23 | provisions. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C.

24 | § 1367 to hear and decide claims arising under state law.

25 | **INTRADISTRICT ASSIGNMENT**

26 |     2.    A substantial part of the events and/or omissions complained of herein occurred in

27 | Alameda County, California and this action is properly assigned to the San Francisco or Oakland

28 | divisions of the United States District Court for the Northern District of California.

1

PLAINTIFF DEREK WHEAT'S COMPLAINT FOR DAMAGES

**PARTIES**

3.     Plaintiff Derek Wheat (hereinafter "Plaintiff" or "Mr. Wheat") is a legal resident of the State of California and a resident of Marin County.

4.     Defendant Harold Orr (hereinafter "Orr" or "Defendant Orr") is, and at all times herein relevant was a California licensed medical doctor who holds a physicians and surgeons license number C37120 through the California Medical Board. Dr. Orr is employed through defendant Corizon and acts as the medical director of the Santa Rita Jail in Alameda County, California.  Orr was acting within the course and scope of his employment and under color of state law.

5.     Defendant Magdalena Inocencio (hereinafter "Defendant Inocencio or "Inocencio") is, and at all times herein relevant was, a California licensed registered nurse holding license number 356898 issued by the California board of registered nursing.  Inocencio was acting with in the course and scope of her employment and under color of state law.  Inocencio is employed by Corizon and works at Santa Rita Jail.

6.     Defendant Anna Blyakherova, also known as Anna Blyakherova Salazar, is, and at all times herein relevant was, an employee of Corizon who works at Santa Rita Jail.  Blyakherova is licensed by the California Board of vocational nursing as a licensed vocational nurse holding license number 228664.  Blyakherova was acting within the course and scope of her employment and under the color of state law.

7.     Defendant Scott King is, and at all times herein relevant was, the legal/compliance officer with Corizon.  King is responsible for, among other things, the drafting of policies that comply with HIPPA, the California Medical Privacy Act, other regulations, and approving or denying requests for information and records of former patients.  King was acting within the course and scope of his employment and under the color of state law.

8.     Corizon Health, Inc., formerly known as "Prison Health Care Services," is, and at all times herein relevant was, a Delaware corporation with its principal place of business in Brentwood, Tennessee. Corizon advertises itself as a "Christian company", the precise meaning of which is unknown to Plaintiff. Corizon has a contract to provide health care services to inmates of the Sana Rita Jail.

2

9.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants named herein as Does 1 through 50, inclusive, are unknown to Plaintiff, who therefore sues said defendants by fictitious names.  Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as a fictitiously named defendant is in some manner responsible for the events and happenings herein referred to.  When Plaintiff ascertains the true names and capacities of Does 1 through 50, inclusive, Plaintiff will ask leave of this Court to amend this complaint by setting forth their true names and appropriate charging allegations.

10.     Plaintiff is informed and believes and based thereon alleges that at all times herein mentioned, each of the defendants named in the caption of this complaint, which is incorporated herein by reference, was, and is, the agent, servant and/or employee of each of the other defendants, and that all of the things alleged to have been done by said defendants were done in the capacity of, and as the agents of, the other co-defendants.

## GENERAL ALLEGATIONS

11.     On November 15, 2008 Plaintiff was arrested and transported to the Alameda County Jail.

12.     Plaintiff was assessed by an unknown nurse and informed of the medical care available to Plaintiff by Corizon Health Services, then known as "Prison Health Services."

13.     Plaintiff was informed that the funds to pay for the medical care was through the taxpayers of Alameda County, and that Corizon would bill Alameda County who would pay for any medical services needed.

14.     After approximately two (2) months, Plaintiff felt depressed and was suffering from other maladies.

15.     Plaintiff signed a "sick call" form and originally saw defendant Blyakherova.  Before accepting treatment from Blyakherova, Plaintiff informed Blyakherova that he would only accept treatment from Corizon if his medical records were never released absent his written permission or a court order.

16.     Defendant Blyakherova assured Plaintiff that both she and Corizon would never release Plaintiff's medical records absent his express written permission or a court order.

3

17.     Based on the assurances to Plaintiff, and only after the assurances to Plaintiff, he entered into an oral agreement with Corizon whereby Plaintiff would divulge his medical conditions and ailments to Corizon and defendant Blyakherova and they would treat Plaintiff.

18.     Plaintiff then divulged his medical conditions and, on information and belief, Alameda County paid Corizon for Plaintiff's medical care.

19.     Plaintiff would not have allowed Corizon to treat Plaintiff if Corizon did not tell Plaintiff that they would not release his medical records absent his written consent.

20.     Plaintiff was referred for treatment to defendant Inocencio.  Plaintiff was aware that defendant Inocencio was a registered nurse with a higher level of training than defendant Blyakherova.

21.     Before allowing the treatment to commence with defendant Inocencio, Plaintiff again informed Inocencio that he only would divulge his conditions and mental health/depression issues if Corizon would not release his records absent a court order or his express written authorization.

22.     Defendant Inocencio assured Plaintiff that absent a court order, Corizon would never release any of Plaintiff's medical or mental health records.

23.     Plaintiff reasonably believed defendant Inocencio and would not have accepted medical care from Corizon had Plaintiff known that Corizon would have released Plaintiff's medical records without a court order or his written consent.

24.     Based on the assurances described above, Plaintiff divulged his medical conditions/depression symptoms to defendant Inocencio and, based on information and belief, Plaintiff alleges that Corizon was paid for its treatment of Plaintiff.

25.     Plaintiff was referred to see and did see defendant Orr.  Prior to agreeing to treatment with Orr, Plaintiff asked defendant Orr if any of Plaintiff's medical records could or would be released by Corizon.  Orr explained that none of Plaintiff's records that were prepared, authored, stamped, or handled by Corizon could or would be released by Corizon without either a court order signed by a judge, or Plaintiff's written consent.

26.     Orr also informed Plaintiff that Orr was a minister and he put "[his] word as a pastor" that under no circumstances would any document or record under Corizon's control, or that was

4

1   authored, prepared, stamped, signed, handled, or created by any Corizon employee would be released

2   to any third party without a court order, signed by a judge, or Plaintiff's signed written authorization.

3        27.    Based on these assurances, Plaintiff accepted treatment from Orr, Blyakherova,

4   Inocencio, and Corizon.

5        28.    Plaintiff would have refused the services of Corizon and would have seen his own

6   medical doctor, as California law allows any inmate to be seen by his own medical doctor at the jail.

7        29.    As a result of the assurances that were provided to Plaintiff, Plaintiff divulged

8   confidential information relating to his medical conditions and feelings of depression to Corizon

9   employees.

10       30.    Corizon employees prescribed medication for Plaintiff's depression and depression

11   related symptoms.

12       31.    A nurse, either Blyakherova, or Inocencio, would give Plaintiff medicine and check

13   off that Plaintiff had received the medicine in a Corizon folder.

14       32.    Prior to receiving his first dose from defendant Blyakherova, Plaintiff asked

15   Blyakherova if the documents were she was recording the dispensing of the medicine were medical

16   records subject to Corizon's control.

17       33.    Defendant Blyakherova assured Plaintiff that her folder showing the dispersing of

18   medicine was Corizon property and would never be given to any non-Corizon employee absent a

19   court order signed by a judge or a written release signed by Plaintiff.

20       34.    Plaintiff asked defendants Inocencio and Orr the same question set forth in paragraph

21   32 and each gave the same specific answer set forth in paragraph 33.

22       35.    Plaintiff would not have accepted the services or medication of Corizon if Plaintiff

23   was not told that it would not be released absent a court order signed by a judge or Plaintiff's written

24   authorization to release the records.

25       36.    Plaintiff also called and spoke with defendant Scott King, the chief compliance

26   officer.  King informed Plaintiff of the same thing as the other defendants.  Namely, that absent a

27   court order or Plaintiff's authorization, no records of prescriptions dispensed would ever be released

28   to any non-Corizon employee.

5

37.    Plaintiff was unaware that at the same time these representations were made, Corizon, then known as Prison Health Services, was a company in meltdown.

38.    There were numerous lawsuits across the country against the company for withholding necessary medical care from inmates to increase profits.

39.    Corizon regularly hired incompetent foreign medical school graduates who were dangerous and had malpractice histories, as they were the only ones willing to work for a fraction of free market rates, in a dangerous jail like Santa Rita.

40.    Numerous counties were ending their contracts with Corizon because their incompetence, greed, poor management, and practice of putting profits over patient safety was literally killing inmates and exposing counties to potential multi-million dollar judgments for deliberate indifference to inmates medical needs.

41.    Inmate deaths were skyrocketing for Corizon, but profits were too.  Times were good for the Brentwood, Tennessee based Corizon, and whiskey and moonshine flowed freely at Corizon holiday parties as the deaths and lawsuits mounted.

42.    At the same time, labor relations with Corizon's employees could not have been worse.

43.    Maxine Persky, a nurse at Santa Rita Jain and 10 year Corizon employee was issuing press releases on PR news web and through the media calling her employer "a greedy out of state corporation" and informing the public that Corizon's practice of low pay and intimidation puts inmates "at great risk."

44.    Another Corizon nurse, Blaire Behrens informed the public through an SEIU press release that Corizon was in shambles, providing sub par care, and was "an out of state company com[ing] into our community [to] take advantage of our taxpayers."

45.    As a result of this turmoil Corizon's contract was in jeopardy in 2011 and 2012 based on the continued labor unrest, caused by Corizon's failure to pay a fair wage to its own employees and "intimidation tactics" it employed against its workforce.

46.    As a result of these factors, Corizon had a policy of ignoring HIPPA, California privacy laws, and Article I, Section I of the California Constitution, and provided medical records to

6

1  Alameda County in lawsuits that the county was a defendant in, that involved the sheriffs office as a

2  defendant and inmate as a plaintiff.

3       47.    Corizon regularly released confidential medical records to attorneys who were

4  representing Alameda County in litigation without a court order, subpoena, or written release from

5  the patient.

6       48.    Defendant King, the legal compliance officer, drafted and approved of this policy as it

7  was believed that it increased business and kept clients, i.e. the jails and counties, happy.

8       49.    At the time that defendants Blyakherova, Orr, Inocencio, and King told Plaintiff that

9  his records would not be released without a court order or his written authorization, they each knew

10  that the statement was a lie, as King had informed them of the policy.

11       50.    Defendants Blyakherova, Orr, Inocencio, and King knew that Plaintiff would rely on

12  their representations, Plaintiff did rely on their representations, and Plaintiff suffered damages as a

13  result of relying on their representations.

14       51.    In late 2011, Plaintiff sued the County of Alameda and several employees of the

15  Alameda County Sheriffs Office, for constitutional deficiencies that resulted in Plaintiff's rights

16  being violated.  Neither Corizon, nor its employees, were defendants in that action.

17       52.    The lawsuit was settled with defendants paying Plaintiff a six (6) figure settlement.

18       53.    Plaintiff's deposition was noticed for December 27, 2012.

19       54.    On or about November 1, 2012, in preparation for the deposition, Steven Wolen, an

20  attorney for the County of Alameda, contacted the litigation coordinator for Alameda County and

21  requested Plaintiff's medical and psychiatric records.

22       55.    At this point, Plaintiff was not in custody, as he had been released on September 23,

23  2009, and filed suit against the county on September 12, 2011.

24       56.    The litigation coordinator for Alameda County then contacted Corizon.

25       57.    Defendant Blyakherova first reviewed the request, approved it, and gave Plaintiff's

26  medical and psychiatric records to defendant Inocencio.

27       58.    Defendant Inocencio then took the Plaintiff's medical and psychiatric records,

28  reviewed them, approved the request, and gave them to defendant Orr.

7

59.     Defendant Orr called a meeting with defendant Blyakherova and defendant Inocencio, and agreed to release Plaintiff's medical and psychiatric records only if they each agreed, along with the concurrence of defendant Scott King.

60.     Defendants Orr, Blyakherova, and Inocencio called defendant King.  King explained that although there actions were "obviously illegal," they needed to keep the county happy.  There was just too much bad press with the union/employee revolts, the mounting inmate deaths, and all of the other complications of trying to profit off of the imprisoned, to risk alienating the county.

61.     As King explained, Corizon was seeking a contract extension worth $93,000,000 with Alameda County, and could not risk losing it "over some damn inmate who wants to sue."

62.     Defendant King concurred with defendants Orr, Blyakherova, and Inocencio and ordered Plaintiff's medical and psychiatric records released.

63.     Plaintiff went to his deposition on December 27, 2012.  He was horrified, shamed, embarrassed as counsel for Alameda County produced Plaintiff's psychiatric records from Corizon.

64.     Plaintiff was then humiliated as counsel read off the medication that Plaintiff was taking, when he took it, and what it was for.

65.     Opposing counsel used the records, stamped by Blyakherova and Inocencio, to read off what the medications were prescribed for, and what symptoms Plaintiff's depression related illness caused him.

66.     Plaintiff endured hours of a deposition and was humiliated, embarrassed, and appalled, as the "confidential" medical records, entrusted to Corizon, were used to attack him.

## FIRST CAUSE OF ACTION

### Violation of Plaintiff's Right to Privacy under 42 U.S.C. § 1983

### and the 5th and 14th Amendment to the United State Constitution

### (Against All Defendants)

67.     Plaintiff incorporates by reference herein as though fully set forth the allegations contained in paragraphs 1-66 above.

68.     Plaintiff had a right to privacy in his medical and mental health records under the Fifth and Fourteenth Amendments of the United States Constitution.

8

69.     Defendants violated Plaintiff's right to privacy in his medical records and mental health records by ordering released, and then releasing, Plaintiff's medical records and mental health records to the attorneys for the County of Alameda without first obtaining Plaintiff's written permission or a court order.

70.     As a proximate result of Defendants' actions in releasing his medical records and mental health records to the attorneys for Alameda County Plaintiff has suffered injuries and damages in the form of mental anguish and humiliation.

WHEREFORE, Plaintiff prays for a damages as set forth below.

## SECOND CAUSE OF ACTION

**Invasions of Privacy**

**California Constitution Article I, Section I**

**(Against All Defendants)**

71.     Plaintiff incorporates by reference herein as though fully set forth the allegations contained in paragraphs 1-70 above.

72.     Plaintiff had a legally protected privacy interest in his medical records and medical health records.

73.     The facts set forth above establish that Plaintiff had a reasonable expectation of privacy in his medical records and mental health records under the circumstances.

74.     The conduct of Defendants in ordering released, and then releasing, Plaintiff's medical records and mental health records to the attorneys for the County of Alameda without first obtaining Plaintiff's written permission or a court order amounts to a serious invasion of Plaintiff's protected privacy interest.

75.     As a proximate result of Defendants' actions in releasing his medical records and mental health records to the attorneys for Alameda County Plaintiff has suffered injuries and damages in the form of mental anguish and humiliation.

WHEREFORE, Plaintiff prays for damages as set forth below.

## THIRD CAUSE OF ACTION

**Negligence**

9

1    **(Against All Defendants)**

2        76.    Plaintiff incorporates by reference herein as though fully set forth the allegations

3    contained in paragraphs 1-75 above.

4        77.    Defendants owed Plaintiff a duty not to release his medical information and mental

5    health information to third parties.

6        78.    Defendants breached the duty they owed to Plaintiff by releasing Plaintiff's medical

7    records and mental health records to the attorneys for the County of Alameda without first obtaining

8    Plaintiff's written permission or a court order.

9        79.    Defendants release of Plaintiff's medical records and mental health records to the

10   attorneys for Alameda County was the proximate cause of damages to Plaintiff.

11       80.    Plaintiff has suffered injuries and damages in the form of mental anguish and

12   humiliation as a result of Defendants' actions.

13       WHEREFORE, Plaintiff prays for damages as set forth below.

14                              **FOURTH CAUSE OF ACTION**

15                                  **Breach of Contract**

16                                **(Against All Defendants)**

17       81.    Plaintiff incorporates by reference herein as though fully set forth the allegations

18   contained in paragraphs 1-80 above.

19       82.    Plaintiff entered into an oral agreement with Defendants on or about January 2009.

20   Plaintiff provided his medical information and information about his mental health to Defendants so

21   that Defendants could provide Plaintiff with the appropriate treatment.  Plaintiff specifically inquired

22   as to whether his medical records would ever be released absent his written permission or a court

23   order.  Defendants responded that his medical records would not be released without his written

24   permission or a court order.  Defendants accepted monetary compensation from Alameda County for

25   the treatment that they provided to Plaintiff.

26       83.    Plaintiff has performed all conditions, covenants, and promises required to be

27   performed in accordance with the oral agreement entered into on or about January 2009.

28       84.    Defendants breached the oral agreement entered into on or about January 2009 by

                                            10

releasing Plaintiff's medical records and mental health records to the attorneys for the County of Alameda without first obtaining Plaintiff's written permission or a Court order.

85.   Plaintiff discovered that Defendants breached the agreement on December 27, 2012 when he was deposed by counsel for Alameda County and copies of his medical records and mental health records were presented as exhibits at the deposition.

86.   As a result of the breach of the agreement Plaintiff sustained damages in the form of mental anguish and humiliation.

WHEREFORE, Plaintiff prays for damages as set forth below.

### FIFTH CAUSE OF ACTION

**Intentional Infliction of Emotional Distress**

**(Against All Defendants)**

87.   Plaintiff incorporates by reference herein as though fully set forth the allegations contained in paragraphs 1-86 above.

88.   Defendants actions in releasing Plaintiff's medical records and mental health record's to the attorneys for the County of Alameda without first obtaining Plaintiff's written permission or a court order was extreme and outrageous conduct with the intention of causing, or reckless disregard to the probability of causing, emotional distress.

89.   Plaintiff suffered severe and/or extreme emotional distress.

90.   Defendants' actions were the actual and proximate cause of Plaintiff's severe and/or extreme emotional distress.

WHEREFORE, Plaintiffs prays for damages as set forth below.

### SIXTH CAUSE OF ACTION

**Breach of Fiduciary Duty**

**(Against All Defendants)**

91.   Plaintiff incorporates by reference herein as though fully set forth the allegations contained in paragraphs 1-90 above.

92.   Defendants had a fiduciary relationship to Plaintiff because Plaintiff's status as an inmate in the Alameda County Jail whom they were contractually obligated to provide with health

11

services.  Defendants had a fiduciary duty to not disclose Plaintiff's medical records and mental

health records to another party without the written authorization from Plaintiff or a court order.

93.    Defendants breached their fiduciary duty to Plaintiff by disclosing his medical records

and mental health records to the attorneys for Alameda County without first obtaining Plaintiff's

written permission or a court order.

94.    Plaintiff suffered damages in the form of humiliation and mental anguish as a result of

Defendants actions.

WHEREFORE Plaintiff prays for a judgment as follows:

1.    Compensatory damages in the amount of $5,000,000;

2.    Punitive damages against the natural person defendants in amounts to be determined

according to proof;

3.    Costs of suit;

4.    Attorneys fees, when counsel is retained, according to proof;

5.    For any other relief that the Court finds just and proper.

Dated:  December 24, 2013                      DEREK SEAN WHEAT

Derek Sean Wheat
Plaintiff, Pro se

12